UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS L. BAWKEY,

    Plaintiff,

v.                                                    Case No. 1:17-cv-1068
                                                        Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB). While plaintiff was represented by counsel at the administrative level, he filed this appeal without an attorney.

       Plaintiff's DIB claim involves a closed period, commencing on January 1, 2012 (his alleged disability onset date) through June 30, 2015 (his date last insured). PageID.32, 250. Plaintiff identified his disabling conditions as back injury, left thumb fused, left knee injury, right knee injury, left leg injury, deep vein thrombosis (DVT), depression, anxiety and pain. PageID.265. Prior to applying for DIB, plaintiff obtained a GED, and had past employment as an insulation worker, asbestos removal worker, saw operator, and automobile body customizer. PageID.40, 253. Administrative law judge (ALJ) Ohanesian reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 8, 2016. PageID.30-42. This

decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II.     ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, ALJ Ohanesian found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2012 and met the insured status requirements of the Social Security Act

through June 30, 2015. PageID.32. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: degenerative disc disease; status-post left ankle fracture w/open reduction-internal fixation; DVT; an intermittent explosive disorder; poly-substance abuse disorder; adjustment disorder and mixed mood and a substance-induced adjustment disorder. PageID.32. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.32.

> The ALJ decided at the fourth step that:
>
> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) of the Regulations. The claimant is able to perform occasional climbing of ramps and stairs with no climbing of ladders, ropes and scaffolds. He is able to perform occasional balancing, stooping, kneeling, crouching and crawling. He can perform occasional handling and frequent fingering with the left upper extremity. He is able to tolerate occasional exposure to vibration [sic] left upper extremity and no exposure to unprotected heights. The claimant is limited to unskilled work with occasional interaction with the public, coworkers and supervision. There can be frequent exposure to extreme cold. The claimant can perform occasional foot control operations with the left lower extremity.

PageID.36. The ALJ also found that through the date last insured, plaintiff was unable to perform his past relevant work. PageID.40.

At the fifth step, the ALJ determined that, through the date last insured, plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy. PageID.41-42. Specifically, the ALJ found that plaintiff could perform the requirements of sedentary and unskilled occupations in the national economy such as office clerk (277,000 jobs), an order clerk (19,000 jobs), a surveillance system monitor (17,000 jobs). PageID.41-42. Accordingly, in a decision entered on December 8, 2016, the ALJ determined that

plaintiff has not been under a disability, as defined in the Social Security Act, at any time from January 1, 2012 (the alleged onset date) through June 30, 2015 (the date last insured).  PageID.42.

## II.     The *Earley* decision

This is not plaintiff's first claim for benefits.  On January 10, 2014, ALJ Reamon entered a decision (the "2014 decision") finding that plaintiff was not under a disability from May 1, 2012 through the date of the decision.  In the present case, ALJ Ohanesian reviewed whether plaintiff's condition had worsened since the issuance of the last decision on January 10, 2014:

> A central issue in this case is whether the claimant's functioning has declined since the prior decision from the Administrative Law Judge in January 2014. While both consultative examinations would support such a contention, the claimant has a multi-year gap from treatment from a primary care physician with a recent return in the spring of 2016.  Similarly, the claimant ceased all psychiatric care in June 2015 right after he was refused treatment with benzodiazepines due to a failed drug test. The claimant has a long stretch of no treatment. His reports concerning drug addiction/ alcoholism [DA/A] was highly inconsistent (reporting affirmatively "Yes" to the internal medicine physician and negatively "No" to the consultative psychologist).
>
> In determining the claimant's residual functional capacity, I considered Acquiescence Ruling 98-4(6), *Drummond v. Commissioner of Social Security*, which states that a prior hearing decision's findings of a claimant's residual functional capacity must be adopted by subsequent adjudicators of claims filed under the same title of the Social Security Act in determining whether the claimant is disabled with respect to an unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.
>
> In applying AR 98-4(6), I conclude that new and material evidence warrants a change in the residual functional capacity of the January 10, 2014 decision (Exhibit B-lA).  Specifically, the September 1, 2016 magnetic resonance image (MRI) of the lumbar spine [at Exhibit B-11F/6] supports the restriction to sedentary physical work activities and the other limitations in performing basic physical work activities in Finding #5 of this decision.  In addition, the strength deficit of the left upper and lower extremities noted in the consultative physical examination at Exhibit B-5F/5-8 also supports a sedentary exertion residual functional capacity.

PageID.37.

Since plaintiff filed this action, the Sixth Circuit issued its opinion in *Earley* v. *Commssioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which examined the principles of *res judicata* as it pertains to a subsequent application for benefits involving a different time period. In addressing the issue, that court asked:

> What are those principles? Finality, efficiency, and the consistent treatment of like cases. An administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. That is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application.

*Earley*, 893 F.3d at 933 (internal citations omitted). The court noted that the doctrine of res judicata bars relitigation of the same claim but not litigation of a new claim, pointing out that "Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Earley*, 893 F.3d at 933, quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)). Thus, "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Earley*, 893 F.3d at 933.

In a supplemental filing, defendant stated that ALJ Ohanesian's decision was not inconsistent with the *Early* decision:

> This case concerns *Drummond* and the agency's acquiesce ruling addressing *Drummond* (AR 98-4(6)), but only tangentially. Here, Plaintiff disputes the ALJ's assessment of his physical limitations. The ALJ found that Plaintiff submitted new and material evidence related to his physical impairments and accordingly found that he was not bound by the prior ALJ's RFC assessment. The ALJ performed a full review of all of the record evidence relating to his physical impairments in accordance with *Earley* and his decision is supported by substantial evidence as explained in the Commissioner's brief.
>
> Although the ALJ adopted the same mental limitations in the RFC as the prior ALJ, the ALJ satisfied the principles set forth in *Earley*. The ALJ determined Plaintiff's RFC by considering the prior evidence, the prior ALJ decision, and the later submitted evidence. This thorough review of all of the evidence satisfied the "fresh review" that *Earley* requires. As the court recognized in *Earley*, the claimant "should not have high expectations about success if the second filing mimics the

first one and the individual has not reached any new age (or other) threshold to obtain benefits. What's past likely will be precedent in that setting—as indeed it should be in a system designed to apply the law consistently to similarly situated individuals."

Supplemental Filing (ECF No. 15).

In this instance, ALJ Ohanesian considered plaintiff's present claim as a new claim. He effectively disregarded the 2014 decision by reviewing plaintiff's condition from January 1, 2012 through June 30, 2015 – dates before and after the time frame addressed in the 2014 decision. Given this record, the Court concludes that ALJ Ohanesian's decision was consistent with principles set forth by the Sixth Circuit in *Earley*.

### III.  DISCUSSION

Plaintiff's *pro se* brief listed over 20 errors. PageID.560-564.[1] To the extent plaintiff included arguments, these were cryptic, at times unintelligible, and provided no context for the cases or regulations cited. PageID.566-572. Based on this filing, the Court construes plaintiff's brief as raising three groups of alleged errors: (A) the Appeals Council erred in denying his request for review; (B) the Appeals Council did not address new evidence; and (C) the ALJ's decision is not supported by substantial evidence.

### A.  The Appeals Council's decision denying request for review (¶¶ 1, 2, 3, 4, 4(a) and 4(b))

In these sections, plaintiff contests the Appeals Council's decision denying his request for review. PageID.560-561. Plaintiff contends that the Appeals Council should have reviewed case because: the ALJ abused his discretion (¶ 1); there were several errors of law (¶ 2); and the decision is not supported by substantial evidence (¶ 3). Finally, plaintiff contends that his case includes "several policy and procedural issues that may affect public interest" (¶ 4).

---

[1] Plaintiff also included 11 issues (PageID.565) which appear to repeat or summarize these issues.

PageID.560.  The gist of plaintiff's claim is his belief that the ALJs and members of the Appeals Council have a conflict of interest and make claimants "jump thru hoops" because they are paid from a common pool of money which is divided between them and the workers claiming disability. *See* ¶¶ 4(a) and (b) (stating in part, "Well how does each ALJ get their 2% raise annually if some of those workers are awarded benefits" and "I[']m certain that each member on the Appeals Council is paid a favorable sum annually from that same money.  Now, why on earth would any of them decide to give that working American a chance at receiving any of that money?").  PageID. 560-561.

Plaintiff's claims are without merit.  There is no basis for the Court to review the Appeals Council's denial.  "Only final decisions of the [Commissioner] are subject to judicial review under [42 U.S.C.] § 405(g)."  *Willis v. Secretary of Health and Human Services*, No. 93-6337, 1995 WL 31591 at * 2 (6th Cir. 1995), citing *Califano v. Saunders*, 430 U.S. 99, 108 (1977). When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner.  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). While there is an exception for Appeals Council actions which involve colorable constitutional claims, plaintiff has not raised a constitutional challenge. *See Temples v. Commissioner of Social Security*, 515 Fed. Appx. 460, 463 (6th Cir. 2013) (court lacked jurisdiction to review the Appeals Council's refusal to re-open the claimant's case because she did not raise any colorable constitutional claim); *Cottrell v. Sullivan*, 987 F.2d 342, 345 (6th Cir.1992) ("[a]bsent any colorable constitutional claim. . . a federal court has no jurisdiction to review the Appeals Council's decision not to reopen").  Accordingly, plaintiff's claims of error should be denied.

### B.    New evidence submitted to the Appeals Council (¶ 5)

In ¶ 5, plaintiff points out that the Appeals Council received additional, material evidence and "[t]hat is why the ALJ left the record open for expected test results." PageID.560. Plaintiff misconstrues the role of the Appeals Council and the ALJ's decision to keep the record open. The record submitted at the administrative hearing consisted of exhibits B1A through B4A, B1B through B9B, B1D through B7D, B1E through B12E, and B1F through B10 F. PageID.97. Near the end of the hearing, plaintiff's counsel identified additional medical records. The ALJ stated that "[t]he record shall remain open for a period of 21 days, which is going to run us through the 18th of October 2016 close of business." PageID.128. The ALJ also entered a post-hearing order (exhibit B-13E) to keep the record open for Dr. Richardson's records, an MRI, a Holter monitor study, cardiac ultrasound and Dr. Eggleston's [sometimes referred to as "Teggleston's] records. PageID.127-128, 338. Neither plaintiff nor his counsel sent these additional medical records to the ALJ before the deadline. On October 19, 2016, the day after the deadline passed, the Office of Disability Adjudication and Review sent a fax letter to plaintiff's counsel stating that the requested records had not been received and inviting counsel to request additional time to submit the records. There was no response from plaintiff's counsel and none of these records are listed in the ALJ's decision entered on December 8, 2016. In short, neither plaintiff nor his counsel submitted these records to ALJ Ohanesian for consideration.

These records were sent to the Appeals Council, which identified the exhibits as from the Borgess Heart Institute dated September 14, 2016 to October 20, 2016 (31 pages) and Bronson Methodist Hospital dated September 1, 2016 to October 23, 2016 (5 pages). PageID.21-22, 57-92. In denying plaintiff's request for review, the Appeals Council advised plaintiff that these records were not relevant to his claim:

9

> The Administrative Law Judge decided your case through June 30, 2015. This new information is about a later time. Therefore, it does not affect the decision whether you were disabled beginning on or before June 30, 2015.

PageID.22. To the extent that plaintiff complains of an error by the Appeals Council with respect to receipt of these records, it should be denied for the same reasons as set forth in § III.A., *supra*.

Finally, plaintiff cannot rely on this new evidence to support his claim because it was not part of the administrative record considered by ALJ Ohanesian. When a plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). Pursuant to sentence-six, "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "The party seeking a remand bears the burden of showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social Security*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff does not seek a sentence-six remand for evaluation of these records. Even if plaintiff had requested a remand, he has not established materiality, because, as the Appeals Council noted, these records do not reflect his condition as of his last insured date of June 30, 2015. "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of

receiving DIB expired on June 30, 2015, he cannot be found disabled unless he can establish that a disability existed on or before that date. *Id*. Plaintiff does not explain how these records from 2016 reflect on his condition as it existed in 2015. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status). Accordingly, plaintiff's claim of error should be denied.

### C. The ALJ's decision is not supported by substantial evidence

#### 1. The ALJ did not identify all of his severe impairments (¶¶ 6-10)

Plaintiff contends that the ALJ failed to identify a number of severe impairments including: broad based disc bulge with superimposed central disc protrusion and associated annular tear; central canal stenosis; "bilateral facet arthropatly/hypertoprophy"; bilateral foraminal stenosis; left thumb fixation; left knee chrondomalacia; left knee "epipatella femoral"; left knee popliteal cyst; DVT confirmed via ultrasound in mid femoral artery; DVT in distal posterior tibial artery; depression; and anxiety. PageID.561; ¶¶ 6, 7, 9.[2]

As an initial matter, plaintiff fails to identify which of these conditions existed during the relevant time period of January 1, 2012 through June 30, 2015. Next, plaintiff's contention is simply wrong with respect to a number of these conditions. As discussed, the ALJ found that through the date last insured, plaintiff had severe impairments related to his spine (degenerative disc disease), DVT, and a variety of mental health conditions (an intermittent explosive disorder; poly-substance abuse disorder; adjustment disorder and mixed mood and a substance-induced adjustment disorder). PageID.32.

---

[2] Plaintiff's statement in ¶ 8, i.e., "Every time I begin to read [No. 4] of the ALJ's report it sends me into an angry episode of decomposure," is not a claim of error. *See* PageID.562.

Furthermore, plaintiff's claim that the ALJ failed to identify other conditions as severe impairments is not a ground for reversal. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

### 2.   Listing 1.02A

In ¶ 10, plaintiff states that, "In finding No. 4 of the ALJs report, he states that claimant has no impairments that impeded ambulation. This is not true according to evaluation of Dr. Villareal." PageID.562. Plaintiff is apparently referring to the ALJ's determination that plaintiff did not meet the requirements of Listing 1.02A. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). Here, Listing 1.02A provides in pertinent part:

> **1.02 Major dysfunction of a joint(s) (due to any cause)**: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,

> instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

Listing 1.02A, 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ found that plaintiff did not meet the requirements of the listing, stating in pertinent part:

> Regarding section l.02A, the claimant's impairments do not involve one major peripheral weight-bearing joint resulting in an inability to ambulate effectively, as defined in section l.00B2b of the Listing of Impairments.

PageID.33.

The ALJ assigned little weight to the opinion of Dr. Villareal, a consulting physician who examined plaintiff once in September 2014, stating as follows:

> Although the claimant did not use an assistive device, Adrian Villarreal, DO, the examining physician, strongly believed that such use would be appropriate. In a supine position, the claimant performed the straight leg raise test to 20 degrees bilaterally and, in a sitting position, he performed the straight leg raise test to 45 degrees bilaterally. The circumference of the left leg was 15.5 inches compared to 16.0 inches of the right leg. The claimant performed hip abduction to 30 degrees bilaterally and forward flexion to 90 degrees bilaterally. Knee flexion was 120 degrees bilaterally. The deep tendon reflexes at the biceps were normal bilaterally. Reflexes were diminished at the triceps, brachioradialis were diminished at 1 +/4 bilaterally and the ulnar reflexes were also decreased bilaterally. In the lower extremities, the patellar deep tendon reflexes were normal bilaterally. Babinski was normal on the right side and was very difficult to assess on the left side due to ankle fixation (Exhibit B-5F).
>
> *   *   *
>
> I assign little weight to the September 2014 opinion statement of examining physician Adrian Villarreal, DO, in Exhibit B-5F, who opined that the claimant was able to dress/undress, open a door, make a fist, and write, but could not sit, stand, bend, stoop, carry, push or pull. This opinion is based on a one-time examination and it is inconsistent with the lack of corresponding physical medicine treatment either prior to or since September 2014.

PageID.38-39. In this regard, during the administrative hearing held in September 2016 (two years after Dr. Villareal's examination) plaintiff made no reference to using an assistive device. PageID.94-129.

Even if the ALJ had given more weight to Dr. Villareal's opinion, that opinion would not support the "ineffective ambulation" portion of the listing. While the doctor felt that plaintiff needed an assistive device, he did not specify any particular device or state that plaintiff was unable to ambulate effectively as contemplated by the Listings. *See* Section 1.00B2b.[3] Accordingly, plaintiff's claim of error should be denied.

## 2. The ALJ did not properly address medical evidence (¶¶ 11-14, 18, 21)

Plaintiff claims that the ALJ failed to properly address the medical evidence. In this regard, plaintiff presented a list of alleged errors without explanation or argument: the ALJ made statements not supported by medical findings (¶ 11); the ALJ made multiple errors of fact regarding plaintiff's mental disorders (¶ 12); the ALJ disregarded plaintiff's GAF scores (¶ 13); the ALJ's statement that plaintiff experienced no episodes of decomposition is not true (¶ 14); the ALJ's observation that plaintiff had a lack of medical evidence of treatment was "not material" (¶ 18); and, the ALJ "assigns little weight to every opinion or source statement from medical and psychiatric doctors" (¶ 21). PageID.562-564. Merely listing alleged errors does not establish that the ALJ's decision is not supported by substantial evidence. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to. .

---

[3] Section 1.00B2b states in pertinent part, "examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail."

. . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). *See Reid v. Quality Service Integrity*, No. 16-5107, 2016 WL 11258239 at *1 (6th Cir. Aug. 19, 2016) (although *pro se* filings should be liberally construed, *pro se* litigants must attempt to develop arguments regarding the issues raised in their briefs; a *pro se* party waives appellate review where his appellate brief does not adequately address and argue any issue that he purports to raise in an appeal). Accordingly, the court deems these arguments waived.

### 3. The ALJ did not properly address his residual functional capacity (RFC) (¶¶ 15-17, 19-20) [4]

Plaintiff contests the ALJ's finding that he "can perform occasional balancing, crouching and crawling," stating that the "[a]ctual medical tests prove that claimant can do none of these things (¶ 16). PageID.563. Plaintiff also states that the ALJ's RFC is "outrageous" because "[a]ll of the medical evidence supports symptoms caused by impairments" (emphasis omitted) (¶ 17). *Id*. Plaintiff further contends that the Vocational Expert's (VE's) testimony was not substantial evidence because the ALJ's hypothetical questions "did not encompass all relevant impairments" (¶ 19). PageID.564. Plaintiff's claims of error are nothing more than a list of grievances unaccompanied by any effort at developed argumentation. *See McPherson*, 125 F.3d at 995-96. Accordingly, these arguments should be deemed waived. *Id.*

Finally, in ¶ 20 plaintiff contends that page 9 of the ALJ's decision "directly contradicts statements that he had previously put in the record." PageID.564. The page referred to by plaintiff (PageID.38), contains a recitation of some of plaintiff's medical records. Plaintiff has not explained the relevant statements or contradictions. Accordingly, this claim should be denied.

---

[4] The Court notes that ¶ 15 is not a claim of error, i.e., "On page 6 of the report the ALJ refers to the following RFC that he has found" (emphasis omitted). PageID.563.

## IV. RECOMMENDATION

Accordingly, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: February 6, 2019                                     /s/ Ray Kent
                                                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).